**Michael GOODMAN, Plaintiff,**

v.

**CIBC OPPENHEIMER & CO.; Mirco Teta, Defendants.**

**No. CV 00–9588–GAF.**

United States District Court, C.D. California.

Feb. 12, 2001.

<div style="page-number">1181</div>

Philip Aidikoff, Robert Ohl, Ryan Bakht-
iari, Aidikof & Ohl Beverly Hills, CA, for
plaintiff.

Neal S. Robb, Keesal, Young & Logan,
Long Beach, CA, for defendants.

### AMENDED ORDER DISMISSING PETITION TO VACATE ARBITRATION AWARD

FEESS, District Judge.

## I.

### INTRODUCTION

Plaintiff Michael Goodman, a customer
of CIBC Oppenheimer & Co., arbitrated a

variety of securities fraud claims against Oppenheimer and their employee, defendant Mirco Teta, before an NASD arbitration panel. Having sought nearly $3,000,000 in damages, but achieving an award of only $74,030.75, Goodman petitions this Court to vacate the award under Section 10 of the Federal Arbitration Act on the ground that the arbitrators manifestly disregarded the law. The Court need not reach the merits of Goodman's claim because this Court lacks subject matter jurisdiction over the dispute. Though the parties are diverse, the amount in controversy does not meet the jurisdictional minimum. And though the parties are proceeding under the Federal Arbitration Act, that act does not confer federal question jurisdiction over the dispute, nor is there a federal question raised in the substantive dispute presented in this proceeding. Hence, the petition must be dismissed because this Court lacks jurisdiction over the case.

## II.

## DISCUSSION

■ Federal Courts are courts of limited jurisdiction with no "inherent" subject matter jurisdiction; they can adjudicate only those cases that the Constitution and Congress empower them to adjudicate. See *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). Because a federal court's lack of subject matter jurisdiction is never waived, the matter can be raised by any party at any time and may even be first raised on appeal. *Attorneys Trust v. Videotape Computer Products, Inc.*, 93 F.3d 593, 594–95 (9th Cir.1996). Likewise, the lack of subject matter jurisdiction may also be raised by the Court sua sponte. The Ninth Circuit notes:

Nothing is to be more jealously guarded by a court than its jurisdiction. Jurisdiction is what its power rests upon. Without jurisdiction, it is nothing.

*In re Mooney*, 841 F.2d 1003, 1006 (9th Cir.1988).

### A. GOODMAN'S CLAIM DOES NOT RAISE A FEDERAL QUESTION

Goodman argues that the petition to vacate presents a federal question on two separate grounds. First, he claims that the case arises under federal law because it is brought under the Federal Arbitration Act, 9 United States Code Sections 10. Second, he claims that his petition arises under federal law because the arbitrators resolved questions based on the federal securities laws. Neither claim is meritorious.

#### 1. The Federal Arbitration Act Does Not Create Federal Question

*Jurisdiction*

■ As the Court explained in its previous order, the Federal Arbitration Act does not confer subject matter jurisdiction on the federal courts. *Southland Corp. v. Keating*, 465 U.S. 1, 16, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984). The Court in *Southland* stated:

While the Federal Arbitration Act creates federal substantive law requiring the parties to honor arbitration agreements, it does not create any independent federal-question jurisdiction under 28 U.S.C. S1331 (1976) or otherwise. [Citation.] This seems implicit in the provisions in § 3 for a stay by a "court in which such suit is pending" and in § 4 that enforcement may be ordered by "any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties." [Citations.]

Id., at 16 n. 9, 104 S.Ct. 852. *Accord Garrett v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 882, 883 (9th Cir.1993). In *Garrett*, the Ninth Circuit observed:

Finally, we think that a narrow interpretation of § 10 is consistent with the limited nature of federal-court jurisdiction. As noted by the Second Circuit, "to read

section 10 as bestowing jurisdiction to vacate absolutely any arbitration award would open the federal courts to a host of arbitration disputes, an intent that we should not readily impute to Congress." Id.

For these reasons, we hold that § 10 of the Act does not provide independent jurisdiction to the federal courts.

Id., at 884.

### 2. The Underlying Dispute Does Not Create Federal Question Jurisdiction

The mere presence of federal law questions in an underlying arbitration is insufficient to supply an independent basis for federal question jurisdiction over the petition to vacate that arbitration award. This issue was squarely presented in *Minor v. Prudential Securities, Inc.*, 94 F.3d 1103 (7th Cir.1996). In *Minor*, the petitioner, who suffered substantial investment losses as a Prudential customer, pursued arbitration against Prudential alleging that Prudential had violated various federal securities laws and the federal RICO statute. When Minor's claims were denied in arbitration, she petitioned to vacate the award in federal court. She asserted federal question jurisdiction because the arbitration had encompassed claims under the federal securities act and RICO. The District Court dismissed for lack of jurisdiction, because the question before the Court was not whether federal laws were violated but whether the arbitrators acted on the basis of fraud, corruption and bias, matters that do not involve resolution of a federal question. The Seventh Circuit affirmed.

Likewise in the case, the question is not whether federal laws were violated, but whether the arbitrators acted in manifest disregard of the law. Appellate Courts have unanimously held that judicial review of an arbitrator's decision "is both limited and highly deferential." *Barnes v. Logan*, 122 F.3d 820, 821 (9th Cir.1997).

An award must be confirmed if the arbitrators even "arguably construed or applied the contract and acted within the scope of their authority." Id.

Manifest disregard of the law means something more than mere error in the law. *Michigan Mutual Insurance Company v. Unigard Security Insurance Company*, 44 F.3d 826, 832 (9th Cir.1995). Instead, it must be clear from the record that the arbitrators recognized the applicable law and then ignored it. Id. Since arbitrators need not explain their decisions, a reviewing court can only infer from the facts of the case whether the arbitrator appreciated the law but chose to ignore it. *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 598, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *Houdstermaatschappij v. Standard Microsystems Corporation*, 103 F.3d 9, 13 (2nd Cir.1997). When making this inference, the Court must search for "even a barely colorable justification for the outcome reached," and if one is found, the arbitration award must be confirmed. Id. at 13. This search, however, does not involve a federal question, but rather an analysis of the conduct of the arbitrators. For that reason, the Court concludes that petitioner has not shown that federal question jurisdiction exists in this case.

### B. The Amount In Controversy Does Not Meet The Diversity Jurisdiction Minimum

In contrast to federal question jurisdiction, which examines the nature of the claims brought before the Court, diversity jurisdiction examines the citizenship[1] of the parties and the amount in controversy. It requires that the parties be completely diverse and that the amount in dispute exceed $75,000. 28 U.S.C. § 1332; *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806). Here, Goodman asserts that the parties are diverse, alleging that he is a citizen of Arizona while

---

**1.** In fact, the jurisdictional statement does not indicate the parties' citizenship, only their residence. The Court assumes for purposes of this petition that the parties' places of residence are the same as their places of citizenship.

Teta is a citizen of New York and Oppenheimer's principle place of business in New York.[2] Turning to the amount in controversy, neither party disputes that Goodman originally sought nearly $3,000,000 in damages, yet the arbitration panel awarded him only $74,030.75. (Aidikoff Dec.Ex. A). The troubling issue is whether the "amount in controversy" is the original amount sought in arbitration or the actual amount awarded.

Although Courts have crafted at least four different ways of analyzing the amount in controversy in petitions to vacate or confirm arbitration awards, the Court finds the approach of the Sixth and Eleventh Circuits to be the most widely followed. The case law from those circuits holds that the amount in controversy is equal to the arbitration award regardless of the amount sought in the underlying arbitration. *See Baltin v. Alaron Trading Corp.*, 128 F.3d 1466 (11th Cir. 1997) (party who lost at arbitration moved to vacate; although the other party sought more than $69,000 [at time when minimum was $50,000], since the award was less than $37,000, court lacked jurisdiction); *Ford v. Hamilton Investments, Inc.*, 29 F.3d 255 (6th Cir.1994); (losing party moved to vacate and prevailing party moved to confirm; although losing party sought counterclaims that exceeded jurisdictional minimum, actual award fell short and therefore the court lacked jurisdiction).

Under these cases, the petition should be dismissed because the amount in controversy is less than $75,000. Respondent raises a potentially controlling Ninth Circuit case holding that the amount in controversy is *not* the amount of the award. The Court has reviewed that case and agrees with Respondent that it is distinguishable.

In *American Guaranty Co. v. Caldwell*, 72 F.2d 209, 211 (9th Cir.1934), a case involving a petition to vacate an arbitration award, the Circuit stated, without explanation, that "it is the amount in controversy which determines jurisdiction, not the amount of the award." *Id.* The Court apparently left the reader to infer that the amount originally sought in arbitration is the "amount in controversy" under § 1332. But not only is the significance of the quoted language left uncertain in the opinion, the *Caldwell* court was also confronted with a different procedural posture than the case at bar.

The dispute arose between an employer and an employee, and they proceeded to arbitration. On March 5, 1930, an arbitration panel awarded the employee $32,500. When the employee sought to confirm the award, the employer removed the action, pleading diversity jurisdiction.[3] The District Court vacated the award in light of allegations of arbitrator misconduct. Thereafter, a new arbitration panel convened and ordered that each party take nothing from their action. When the employee sought to vacate, the Court agreed, again remanding the arbitration award. From that judgment the employer appealed, claiming the district court lacked jurisdiction to vacate the second award, because the amount of the award ($0) did not exceed the jurisdictional minimum. The Circuit Court, however, noted that "The appellant first removed this matter to the federal court from the state court at the time appellee sought to confirm the award of $32,5000 in the state court. The District Court originally acquired jurisdiction by reason of the diversity of citizenship." *Id.* at 211.

Respondent correctly argues that the District Court had proper jurisdiction when the action was originally removed, and therefore it could not have lost jurisdiction because the amount in controversy changed. Although Respondent cites no authority in support of its position, it accurately states the law in effect at that time.[4]

---

2. Goodman fails to allege where Oppenheimer is incorporated.

3. The jurisdictional minimum at that time was $3000.

4. As amended in 1988, s8 U.S.C. § 1447(c)

*See, e.g., St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 290, 58 S.Ct. 586, 82 L.Ed. 845 (1938). ("Events occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction."); *Morgan v. Morgan,* 2 Wheat. 290, 15 U.S. 290, 4 L.Ed. 242 (1817) (same). Thus, because of its unique facts, Caldwell is not controlling here.

## IV.

## CONCLUSION

For the foregoing reasons, the Court concludes that it lacks subject matter jurisdiction over the dispute, and orders the case DISMISSED.

IT IS SO ORDERED.

requires "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." *Bailey v. Wal–Mart Stores,* 981 F.Supp. 1415 (N.D.Ala.1997) (explaining the history of § 1447(c)).